SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB #965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:25-cr-00264-IM |
| v. | GOVERNMENT'S SENTENCING MEMORANDUM |
| NOEL ZERON, | |
| Defendant. | |

The government asks the Court to impose a sentence of 21 months' imprisonment, to be followed by a three-year term of supervised release.

The defendant, a street-level fentanyl dealer, was selling an incredibly addictive, destructive, and deadly poison in downtown Portland, Oregon. He was arrested on June 11, 2025, after Investigators served a search warrant on his residence and seized approximately 141 grams of fentanyl. Given the nature of the case, defendant's advisory sentencing guidelines, the societal harm caused by fentanyl, his criminal history, and his personal history and

///

**Government's Sentencing Memorandum**                                                    **Page 1**

characteristics the government believes a sentence of 21 months' imprisonment, to be followed by three years of supervised release is both reasonable and justified.

**A.      Summary of Proceedings.**

On December 18, 2025, the defendant pled guilty to Count 1 of his Indictment which charged him with Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B).  The maximum sentence the Court may impose is a term of 40 years' imprisonment, a fine of $5,000,000, and at least four years of supervised release.  There is also a potential mandatory minimum sentence of five years' imprisonment.

The U.S. Probation Office has completed a Presentence Report (PSR).  The government has no objections to the facts underlying the defendants' criminal conduct (PSR ¶¶ 16 - 20), his Sentencing Guideline calculations (PSR ¶¶ 25 - 34), and his Criminal History (PSR ¶¶ 37 – 41, and 43).  In his plea agreement defendant admitted that:

> [O]n or about June 11, 2025, here within the District of Oregon, law enforcement investigators executed a search warrant on his residence and seized approximately 141 grams of a mixture and substance containing fentanyl, a Schedule II controlled substance, and that the fentanyl was possessed for purposes of further distribution.  Defendant was advised of his of his constitutional *Miranda* rights and admitted that he had been dealing fentanyl in downtown Portland, Oregon and that for the past six weeks he sold 5 to 6 ounces of fentanyl a day.  Investigators also seized approximately $7,322 in cash, which was proceeds from the sale of fentanyl.

Plea Agreement ¶ 6.

The fentanyl seized from the defendants is depicted below:

///

///

///

**Government's Sentencing Memorandum**                                    **Page 2**



Criminal Complaint ¶ 11.

Fentanyl kills – even in very small amounts.  To put the amount of fentanyl the defendant was selling into context, a user of powdered fentanyl will typically burn it on a piece of foil and inhale the smoke.  A user of powdered fentanyl will typically use it in quantities of less than 1/10 of a gram at a time.  Two milligrams is a potentially lethal dose of fentanyl for an average adult. *Fentanyl: What You Should Know*, HEALTH BEAT, Northwestern Medicine (January 2025).  The 141 grams of powdered fentanyl that the defendant possessed is 141,000 milligrams, or approximately 70,500 potentially lethal doses of fentanyl.

### B.      Sentencing Guideline Calculations.

The Court, "in determining the particular sentence to be imposed," is required to consider the "sentencing range established" by the U.S. Sentencing Guidelines.  18 U.S.C. § 3553(a)(4). "The Guidelines are 'the starting point and the initial benchmark,'. . . and are to be kept in mind throughout the process."  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting

**Government's Sentencing Memorandum**                                                                 **Page 3**

*Kimbrough v. United States*, 552 U.S. 85, 108 (2007)).  "All sentencing proceedings are to begin by determining the applicable Guideline range."  *Id*.

Based upon the amount of fentanyl seized the parties believe defendant's initial Base Offense Level is 24, pursuant to U.S.S.G. § 1B1.3 and 2D1.1(a).  PSR ¶ 25, Plea Agreement ¶ 8.

Based upon defendant's guilty plea and acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, the parties ask that the Court grant the defendant a three-level reduction in his offense level.  PSR ¶¶ 32 - 33, Plea Agreement ¶ 11.

Prior to any additional departures or variances, the defendant's initial Adjusted Offense Level is 21.  With a Criminal History Category of III, defendant's initial advisory sentencing guideline range is 46 to 57 months' imprisonment.

Pursuant to 18 U.S.C. § 3553(a), based upon the nature of the offense, the history and characteristics of the defendant, defendant's indication at an early stage in the proceedings about his desire to resolve his case, how similarly situated defendants have been handled by the USAO and the courts, and to achieve a fair and just resolution of the case, the government will recommend that the Court to grant the defendant a three-level downward variance in his overall offense level.  Plea Agreement ¶ 12.

Defendant has been in federal custody since his arrest.

**C.      Government's Recommended Sentence.**

Pursuant to 18 U.S.C. § 3553(a) and the materials submitted by the parties, we ask the Court to impose a sentence of 21 months' imprisonment, to be followed by a three-year term of supervised release.

///

**Government's Sentencing Memorandum**                                          **Page 4**

The defendant was selling fentanyl in downtown Portland.  Fentanyl is an extremely addictive, destructive, and deadly poison that has been devastating the community.  According to law enforcement:

> Fentanyl and methamphetamine remain the primary drug threats, affecting community livability and contributing to drug-related overdose deaths and criminal activity, including crimes against persons and property in the HIDTA region.  In 2023, fentanyl was linked to 75.9% of overdose deaths in Oregon and 51% in Idaho.  Methamphetamine was present in 63.5% of Oregon's overdose deaths and 38% of Idaho's.  Together, these two substances accounted for 41.3% of overdose fatalities in both states.

OREGON-IDAHO HIGH INTENSITY DRUG TRAFFICKING AREA (HIDTA) 2026 THREAT ASSESSMENT, 2025, at 5 (https://oridhidta.org/reports).

The death toll from fentanyl is truly frightening.  For Americans aged 18 to 45, overdoses – primarily the result of illicit fentanyl – remain the leading cause of death.  *CDC Reports Nearly 24% Decline in U.S. Drug Overdose Deaths*, CDC NEWSROOM (Feb. 25, 2025); *DEA Administrator on Record Fentanyl Overdose Deaths,* GET SMART ABOUT DRUGS (August 17, 2024).  Here in Oregon, between 2015 and 2021, Oregon experienced a 932% increase in fentanyl overdose deaths.  *Fentanyl by State Report*, FAMILIES AGAINST FENTANYL (Feb. 4, 2023).  In 2023, within Oregon there were 1,833 overdose deaths, and of those 1,272 were the result of synthetic opioids, such as illicit fentanyl.  *Oregon Overdose Prevention Dashboard*, OREGON HEALTH AUTHORITY (May 1, 2025).  In 2023, "Oregon had the highest rate of increase in fentanyl deaths in the nation with a one-year increase of more than 67[%], compared to a national average of 5[%]."  *Oregon, Washington see largest increases in fentanyl deaths since last year*, KPTV 12 (Sept. 26, 2023).

Even with the most recent decreases in overdose deaths, both nationally and in Oregon, "[f]entanyl continues to be the primary cause of drug overdose deaths in the United States," to

**Government's Sentencing Memorandum**                                                    **Page 5**

include here within Oregon.  *Fentanyl Continues to Be the Leading Cause of Overdose Deaths. What's Being Done to Combat Trafficking into the United States?,* WATCHBLOG: FOLLOWING THE FEDERAL DOLLAR, U.S. GOVERNMENT ACCOUNTABILITY OFFICE (Sept. 4, 2025); *Oregon overdose deaths are down, CDC data shows,* OREGON HEALTH AUTHORITY (May 16, 2025) (While "Oregon's overdose deaths decreased 22% between December 2023 and December 2024, a trend similar to that experienced nationwide . . . The count is still much higher than pre-pandemic years, with 1,480 deaths within that one-year time span, CDC data show.");  *U.S. Overdose Deaths Decrease Almost 27% in 2024,* NATIONAL CENTER FOR HEALTH STATISTICS, U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION (CDC) (May 14, 2025)( https://www.cdc.gov/nchs/pressroom/ releases/20250514) (in 2024 "there were there were an estimated 80,391 drug overdose deaths in the United States – a decrease of 26.9% from the 110,037 deaths estimated in 2023" and of those deaths, in  2023, 76,282 involved synthetic opioids (fentanyl) and in 2024, 48,422 involved synthetic opioids (fentanyl)).

While the government recognizes that the defendant was a street-level dealer and nowhere near being the leader of a drug trafficking group, he was nevertheless selling an extremely deadly poison to the users on the street.  In his effort to make money he was targeting and preying upon addicts within our city – in the same area where many governmental agencies and non-profit groups are valiantly trying to provide services for these people this defendant was selling fentanyl to them and profiting from their addictions and suffering.

Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the

**Government's Sentencing Memorandum**                                    **Page 6**

need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we believe a sentence of 21 months' is reasonable. We ask the Court to impose it, to be followed by a three-year term of supervised release.

There are no charges to be dismissed.

There is an appeal waiver.

Following his time in custody the defendant will be deported to Honduras.

Dated: March 19, 2026.                              Respectfully submitted,

                                                   SCOTT E. BRADFORD
                                                   United States Attorney


                                                   /s/ *Scott Kerin*
                                                   _____
                                                   SCOTT M. KERIN, OSB # 965128
                                                   Assistant United States Attorney